Michael Yancey III, NV # 16158
PRICE LAW GROUP, APC
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
P: (818) 600-5537
F: (818) 600-5464
E: michael@pricelawgroup.com
*Attorneys for Plaintiff*
*Derek Land*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DEREK LAND,<br><br>              Plaintiff,<br><br>v.<br><br>ALLIED COLLECTION SERVICES, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC,<br><br>              Defendants. | **Case No.:** 2:22-cv-1641<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>    1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff Derek Land, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Allied Collection Services, Inc. ("Allied"), and Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (referenced collectively as "CRA Defendants").

## I.    __INTRODUCTION__

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by CRA Defendants. Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.    Plaintiff's Complaint also alleges that CRA Defendants also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants' reporting inaccurate information about Plaintiff.

3.    Plaintiff's Complaint also arises from violations of the FCRA, against Defendant Allied for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian, Equifax, and Trans Union.

## II.    __JURISDICTION AND VENUE__

4.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.    Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.   PARTIES

6.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

7.    Plaintiff is a natural person who resides in Las Vegas, Clark County, Nevada.

8.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.    Defendant Allied is a financial institution engaged in the business of collecting debt. Allied is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2. Upon information and belief, Allied is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Allied's principal place of business is located at 3090 South Durango Drive #101, Las Vegas, NV, 89117. Allied can be served through its registered agent, Michael Feeney, located at 3090 South Durango Drive #101, Las Vegas, NV, 89117.

10.    Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

12.    Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.    Defendants Experian, Equifax, and Trans Union regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

14.    During all times pertinent to this Complaint, Allied and the CRA Defendants were authorized to conduct business in the State of Nevada and conducted business in the State of Nevada on a routine and systematic basis.

15.    During all times pertinent to this Complaint, Allied and the CRA Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16.    Any violations by Allied and the CRA Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

17.    Neither Allied nor the CRA Defendants maintained procedures reasonably adapted to avoid any such violations.

## IV.   **FACTUAL BACKGROUND**

18.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

19.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

20.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

21.     The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

22.     Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

23.    The CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

24.    The CRA Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

25.    The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by the CRAs from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

26.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

27.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' consumer reports.

28.    The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

29.    FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

30.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

31.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

      a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or

missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be. A collection account is highly damaging to credit scores.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

32. Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

33. DTI compares the total amount a consumer owes to the total amount a consumer earns.

34. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

35. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a

consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

36.    The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

37.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting after receiving a consumer dispute.

38.    Thus, the CRA Defendants are on continued notice of their inadequate post-dispute reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

39.    On or about February 28, 2021, Plaintiff notified his apartment complex, Paradise Square, that he intended to vacate the premises by March 15, 2021.

40.    On or about March 1, 2021, Paradise Square acknowledged his request and provided him a prorated amount due in the amount of $433.98 for the month of March. At the time of his request, Plaintiff was current on his monthly rental obligations.

41.   On or about March 1, 2021, Plaintiff made a payment of $433.98 to Paradise Square for the prorated rent for March 2021.

42.   On or March 15, 2021, Plaintiff vacated the premises at Paradise Square and was no longer liable for the property.

43.   In March 2022, Plaintiff was attempting to refinance his home to take advantage of the low interest rates.

44.   During the mortgage application process, Plaintiff's mortgage officer notified him of an open collection account and informed him that he could not get approved until the account was resolved.

45.   In or around March 2022 CRA Defendants inaccurately reported a collection account with Allied Collection Service (the "Account"), ending with 6001, assigned on January 20, 2022, with an original credit listed as Paradise Square Apartments.

46.   The Account should not have been reporting because Plaintiff provided notice of his intent to vacate the premises, Paradise Square acknowledged his request and provided him a prorated amount due in the amount of $433.98, and Plaintiff paid the $433.98.

47.   However, the CRA Defendants inaccurately reported the collection Account with an amount owed of $3,251, instead of not reporting it at all.

*Plaintiff's Disputes*

48.     On or about April 1, 2022, Plaintiff mailed letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

49.     The letters specifically advised that Plaintiff requested to end his lease with Paradise Square, that Paradise Square responded to his requested and prorated his rent, and Plaintiff paid the prorated amount due.

50.     Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

51.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Allied Collection Services ("Allied") within 5 business days of receipt.

52.     Upon information and belief, Allied received Plaintiff's dispute.

53.     On or about April 19, 2022, Equifax responded to Plaintiff's dispute and continued to inaccurately report the collection Account and updated the balance owed to $3,292.

54.      On or about April 23, 2022, Trans Union responded to Plaintiff's dispute and continued to inaccurately report the collection Account and updated the balance owed to $3,294.

55.     Upon information and belief, Experian did not respond to Plaintiff's April 1, 2022, dispute letter.

56.     On or about May 13, 2022, Plaintiff pulled his Experian credit report, and the Account was not reporting on his Experian credit report.

57.     On or about May 19, 2022, Plaintiff mailed a second dispute letter to Equifax and Trans Union disputing their inaccurate reporting of the Account.

58.     The letters specifically advised that Plaintiff previously disputed the Account, that he does not owe Paradise Square any money, and he attached a copy of the communication he received from Paradise Square agreeing to accept a prorated rent to vacate the premises.

59.     Upon information and belief, Equifax and Trans Union received Plaintiff's dispute letters.

60.     Upon information and belief Equifax and Trans Union forwarded Plaintiff's disputes to Allied within 5 business days of receipt.

61.     Upon information and belief, Allied received Plaintiff's dispute.

62.     Upon information and belief, Equifax and Trans Union failed to respond to Plaintiff's May 19, 2022, dispute letter.

63.     On or about June 27, 2022, Plaintiff pulled a Three Bureau Credit Report and discovered that in addition to Equifax and Trans Union reporting the inaccurate Account, the Account reappeared on his Experian credit report.

64.     On July 7, 2022, Plaintiff pulled his Experian credit report from annualcreditreport.com to confirm whether the Account was in fact reporting.

65.    To the surprise of Plaintiff, Experian's report was inaccurately reporting the Account as an open collection, with a past due balance of $3,320.

66.    On or about July 15, 2022, Plaintiff mailed a second dispute letter to Experian and a third dispute to Equifax and Trans Union disputing their inaccurate reporting of the Account.

67.    The letters specifically advised that Plaintiff previously disputed the Account and provided the communication he sent to Paradise Square requesting to vacate the premises, their response agreeing to prorate the rent, and proof that Plaintiff paid the prorated rent.

68.    Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

69.    Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Allied within 5 business days of receipt.

70.    Upon information and belief, Allied received Plaintiff's dispute.

71.    On or about August 5, 2022, Trans Union responded to Plaintiff's dispute and continued to inaccurately report the collection Account and updated the balance owed to $3,342.

72.    On or about August 23, 2022, Experian responded to Plaintiff's dispute and continued to inaccurately report the collection Account and updated the balance owed to $3,341.

73.     Upon information and belief, Equifax did not respond to Plaintiff's July 15, 2022, dispute letter.

74.     Experian, Equifax, and Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to Allied, despite Plaintiff providing proof that the Account was reporting inaccurately.

75.     Rather than perform an investigation based on Plaintiff's dispute based and supporting documentation, the CRA Defendants merely parroted information furnished by Allied that indicated the Account was accurately reporting as an open collection.

76.     The CRA Defendants' failure to report the Account accurately after receiving Plaintiff's dispute is particularly egregious because Plaintiff provided CRA Defendants with documentation to support that the Account was inaccurately reporting.

77.     Allied failed to conduct a reasonable investigation after receiving notice of Plaintiff's disputes from Experian, Equifax and Trans Union. Allied failed, among other things, to review (or intentionally ignored) all relevant information regarding the dispute.

78.     Consequently, Allied continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite possessing information

from which Allied could have reported the Account accurately. Allieds's failure to provide the Defendant CRAs with accurate Account information is particularly egregious as Allied was notified of the inaccurate information through Plaintiff's disputes.

79.    Allied and the CRA Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and/or payment histories.

80.    Allied and the CRA Defendants inaccurately reported the Account as an open collection account with a balance owed despite the original creditor being paid in full and therefore the Account should not have reported at all.

81.    Allied and CRA Defendants' reporting of the Account is patently false/incorrect and therefore inaccurate.

82.    If not patently false, Allied and CRA Defendants' reporting of the Account is materially misleading and therefore inaccurate.

83.    Plaintiff specifically notified Allied and the CRA Defendants that the Account was paid in full, but the CRA Defendants rejected this specific notice.

### *Plaintiff's Damages*

84.    Upon information and belief, had Defendants not reported the Account, Plaintiff's credit scores and/or DTI would have been better.

16

85.     Defendant's reporting of an additional $3,342 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

86.     The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

87.     Plaintiff applied for a mortgage loan and was denied – due to the inaccurate reporting of the Account by Defendants. Plaintiff also applied for a Synchrony Bank/Lowes credit card and was denied – due to the inaccurate reporting of the Account by Defendants.

88.     Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Synchrony Bank by Defendants during the process of Plaintiff's credit application.

89.     As a direct result of Allied and the CRA Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

90.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

# V.    COUNT I
## CRA DEFENDANTS
### Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)

91.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

92.    The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

93.    In this case, the CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff disputed the Account.

94.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of disputed accounts.

95.    The CRA Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting disputed accounts.

96.    Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA.

97.    Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their duties under the FCRA. Accordingly, the CRA Defendants deprived Plaintiff of Plaintiff's rights under the FCRA.

98.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when the CRAs knew or should have known the information they were reporting is inaccurate, or otherwise contradicted by information known by the CRAs, reported to the CRAs, or reasonably available to Defendants.

99.    Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the Account with an outstanding balance.

100.    The CRA Defendants' inaccurate reporting was particularly egregious because Plaintiff provided them with documentation to support that the Account was inaccurately reporting.

101.    The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the

furnisher, where, as here, the CRA Defendants possessed the information confirming that the Account was paid, including information concerning continued payments, and/or specific notice from Plaintiff.

102.    The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

103.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

104.    When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

105.    When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

106.    Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

107.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants also violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified them of the inaccurate information in Plaintiff's credit file.

108.   Defendants Experian, Equifax and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    a.   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    b.   Failing to consider all relevant information while investigating Plaintiff's dispute.

    c.   Failing to include all relevant information when notifying Allied of Plaintiff's dispute.

109.   Instead of reasonably reinvestigating Plaintiff's dispute, Defendants Experian, Equifax, and Trans Union did not respond to Plaintiff's dispute and continued to report the discharged Account with an outstanding balance after Plaintiff's bankruptcy discharge.

110.   The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

111.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting an open collection account a debt Plaintiff did not owe.

112.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

113.   The CRA Defendants are a direct and proximate cause of Plaintiff's damages.

114.   The CRA Defendants are a substantial factor in Plaintiff's damages.

115.   The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

116.   Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## VI.   COUNT II
### Defendant Allied
### Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

117.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

118.    The FCRA requires furnishers of information like Allied to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

119.    Allied knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and evidenced by case law. Allied obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Allied acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

120.    Plaintiff disputed the Allied tradeline through all three national CRAs: Experian, Equifax, and Trans Union no less than eight (8) times.

121.    Thereafter, the Defendant CRAs forwarded Plaintiff's disputes to Allied, notifying Allied that Plaintiff was disputing the information it had furnished about the Account.

122.    Allied received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

123.    Allied continues to furnish inaccurate information about Plaintiff to all three CRAs, even though Allied possessed or could have obtained all relevant information about the Account and the inaccuracy that Plaintiff disputed.

124.    The inaccurate Allied Account materially and adversely affects Plaintiff's credit standing.

125.    On at least one occasion within the past two years, by example only and without limitations, Defendant Allied violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute/s to Experian, Equifax, and Trans Union.

126.    Allied violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

    a.    Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

    b.    Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

    c.    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d. Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f. Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g. Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

127. Allied unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

128. Allied is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

129. Consequently, Allied is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law.

Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)   Declaratory judgment that the CRA Defendants violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)   Declaratory judgment that Allied violated the FCRA, 15 U.S.C. § 1681s-2(b);

(c)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(f)   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(g)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.  **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.


RESPECTFULLY SUBMITTED this 28th day of September 2022.


*/s/Michael Yancey*
Michael Yancey III, NV # 16158
PRICE LAW GROUP, APC
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
P: (818) 600-5537
F: (818) 600-5464
E: michael@pricelawgroup.com
*Attorneys for Plaintiff*
*Derek Land*